UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN TIEMAN,

           Plaintiff,

    -v-

CITY OF NEWBURGH, PO JOSEPH PALERMO,
PO JOHN MAGUIRE, PO ERIC ELTZ, PO
PATRICK KELLY, PO ANTHONY GUIDICE, PO
CHRISTOPHER LAHAR, TOWN OF NEWBURGH,
SGT WILLIAM RANSOM, UNKNOWN POLICE
OFFICERS 1-5,

           Defendants.

Case No. 13-CV-4178 (KMK)

OPINION & ORDER

Appearances:

David A. Zelman, Esq.
The Law Office of David A. Zelman
Brooklyn, NY
*Counsel for Plaintiff*

Roberta D. Asher, Esq.
Asher & Associates
New York, NY
*Counsel for Plaintiff*

David Lewis Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant City of Newburgh*

Carl Steven Sandel, Esq.
Drew William Sumner, Esq.
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendants Town of Newburgh and SGT William Ransom*

KENNETH M. KARAS, District Judge:

Plaintiff Steven Tieman brought suit against Defendants City of Newburgh (the "City");

City of Newburgh Police Officers Joseph Palermo, John Maguire, Eric Eltz, Patrick Kelly,

Anthony Giudice, Christopher Lahar, and Unknown Police Officers 1-5; the Town of Newburgh

(the "Town"); Town of Newburgh Sergeant William Ransom; and State Trooper Moises Nales.

The City of Newburgh moves to dismiss all claims against the City and against Defendants

Palermo, Maguire, Eltz, Kelly, Giudice, and Lahar (collectively, the "City Police Officer

Defendants"), and for the Court to reject Plaintiff's request to file his Proposed Amended

Complaint ("PAC").  The Town of Newburgh moves to dismiss all claims against the Town and

against Defendant Ransom, and for the Court to reject Plaintiff's PAC.  For the following

reasons, the Town's Motion To Dismiss is granted and the City's Motion To Dismiss is denied in

part and granted in part.

## I.  Background

### A.  Factual Background

The following factual summary is derived from Plaintiff's PAC, which the Court takes as

true for the purpose of these Motions To Dismiss.[1]  These claims arise out of an incident that

occurred on June 17, 2010, at approximately 5:45 p.m.  (Pl.'s Mem. of Law in Opp'n ("Pl.'s

Mem.") Ex. A (PAC), at ¶ 10 (Dkt. No. 46).)  Plaintiff alleges that he "was lawfully driving on a

public street in Newburgh, New York, when he was approached by a police officer, upon

---

[1] As explained below, Plaintiff's PAC will be accepted unless it would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the PAC contains all of the factual allegations contained in Plaintiff's original Complaint, as well as additional allegations, the Court will merely address the sufficiency of the factual allegations in the PAC. If any portion of the PAC would be subject to dismissal, the corresponding portion of the Complaint necessarily will also be dismissed under Rule 12(b)(6).

information and belief, [Defendant Eltz], who was wearing plain clothes." (*Id.*)[2]  Without warning and "for no apparent reason," Defendant Eltz "began to yell" at Plaintiff, and "told him to get out of the car." (*Id.* ¶ 11.)  Plaintiff further alleges that he "was frightened and thought he was being robbed, so he drove away." (*Id.*)  Defendant Eltz and other police officers, including Defendants Maguire, Kelly, Guidice, Lahar, and Palermo, gave chase to Plaintiff. (*Id.* ¶ 12.)  "At some point thereafter, and prior to Plaintiff stopping his vehicle," Defendants Ransom and Nales joined the chase. (*Id.*)  "After a brief car chase, [P]laintiff pulled over to the side of the road, put his pickup truck in park, turned off the engine, and raised his hands to surrender." (*Id.* ¶ 13.)  Plaintiff alleges that, when he stopped his vehicle, Defendant Nales was located near Plaintiff's vehicle. (*Id.*)

Next, Plaintiff alleges that "one of the defendant police officers, on information and belief [Defendant Maguire], opened the truck door and ordered his police dog to attack [P]laintiff." (*Id.* ¶ 14.)  Plaintiff "was thereupon attacked by the police dog, and punched numerous times by [Defendant Maguire]." (*Id.*)  Plaintiff alleges that he was "not resisting the police officers in any way," but he nonetheless was dragged from his truck and thrown to the ground by Defendant Maguire and other officers, and was "beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.*

---

[2] Plaintiff asserts that he was lawfully driving that evening, but he was "convicted of driving while impaired by alcohol in violation of Vehicle and Traffic Law § 1192(1), criminal possession of a controlled substance in the seventh degree, resisting arrest, unlawful fleeing a police officer in a motor vehicle in the third degree (two counts) and reckless driving in conjunction with this incident." (Mem. of Law in Supp. of the Town of Newburgh and Sergeant William Ransom's Mot. To Dismiss ("Town's Mem.") 2 n.1 (Dkt. No. 30); *see also* Newburgh's Reply Br. in Supp. of 12(b)(5) and 12(b)(6) Dismissal ("City's Reply") 1–2 (Dkt. No. 47).) Whether Plaintiff was driving lawfully is not relevant to the instant Motions, so the Court declines to assess whether, and to what extent, it should consider these seemingly undeniable facts put forth by Defendants.  However, counsel for Plaintiff may someday be called upon to explain the good faith basis for this allegation.

¶ 15.)  Plaintiff alleges that at that point "[t]here were at least fifteen or twenty police officers surrounding" him.  (*Id.*)  Plaintiff alleges that though he was "handcuffed and secured by the police officers, the police dog was again ordered to attack" him, which attack was "completely unjustified, and resulted in numerous further physical injuries."  (*Id.* ¶ 16.)

Plaintiff alleges that the injuries he suffered as a result of this assault "included deep dog bites and lacerations to his left side and left leg; bruising to his jaw, head, back, and arms; lacerations to his right elbow; and a broken left ring finger (caused by a dog bite)."  (*Id.* ¶ 17.) Plaintiff alleges that he was arrested, taken to the Newburgh City police station, then taken for medical treatment at St. Luke's Hospital, and then to Orange County Jail, where he received further medical treatment.  (*Id.* ¶ 18.)  Plaintiff alleges that his wounds became infected while in jail, and that he suffered severe and permanent injuries, including "scarring and weakness in his limbs," "severe physical pain," and "serious and permanent psychological and emotional injuries, including depression, flashbacks, nightmares, unreasonable fear of dogs and police officers, and inability to concentrate."  (*Id.* ¶¶ 19–21.)

According to Plaintiff, the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights."  (*Id.* ¶ 22.)  Additionally, Plaintiff claims that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive force by its employees."  (*Id.* ¶ 23.)  In particular, according to Plaintiff, "[p]ublic court records reveal at least nine suits filed in the five years before the incident [that is the basis for this Action] which allege that police officers employed by [the City] used excessive force during the course of an arrest," "[a]t least five" of which incidents "involved allegations of unnecessary and excessive dog bites."  (*Id.*)  Plaintiff has listed and described the following lawsuits:

In <u>Burley. et al. v. City of Newburgh, et al.</u>, 07-CV-3336, the plaintiffs alleged that on May 11, 2005, police officers employed by [the City] falsely arrested one plaintiff and sprayed him with pepper spray, threw him to the ground, and kicked him in the face causing him to lose consciousness.  The other plaintiff alleged that police officers employed by [the City] falsely arrested him, hit him in the face, and kicked him in the ribs.

In <u>Bryant v. City of Newburgh, et al.</u>, 06-CV-4200, the plaintiff alleged that he was falsely arrested with excessive force by police officers employed by [the City] on both May 17, 2005 and June 22, 2006.

In <u>Garcia. et al. v. City of Newburgh, et al.</u>, 08-CV-1198, [the] plaintiff alleged that on March 30, 2007, he was falsely arrested with excessive force by police officers employed by [the City], including [Defendant Kelly].

In <u>Cooper. et al. v. City of Newburgh, et al.</u>, 09-CV-2234, four plaintiffs alleged that on March 31, 2007, July 8, 2007, August 8, 2007, and August 9, 2007, respectively, [City] police officers arrested one of the plaintiffs with excessive force.  The complaint alleged that during the course of each arrest, officers directed police dogs to "bite and hold" causing serious injuries to each plaintiff.

In <u>Follini v. City of Newburgh, et al.</u>, 08-CV-6347, [the] plaintiff alleged that on July 22, 2007, police officers employed by [the City], including [Defendant Palermo], falsely arrested [the] plaintiff with excessive force, including pushing [the] plaintiff to the ground, repeatedly administering a taser while [the] plaintiff was on the ground, and administering pepper spray directly to [the] plaintiff's face.

In <u>Allen v. City of Newburgh[,] et al.</u>, 08-CV-6771, the plaintiff alleged that on August 12, 2007, officers employed by [the City] arrested him with excessive force, causing injuries including loss of consciousness, shoulder dislocation, facial bruising, and muscle spasms.

In <u>Baynes v. City of Newburgh, et al.</u>, 08-CV-6442, [the] plaintiff alleged that on August 25, 2007, police officers employed by [the City], including [Defendant Palermo] and [Defendant Kelly], physically assaulted, maced, and tased[] both [the] plaintiff and additional arrestees who were not resisting arrest.

In <u>Fahey, et al. v. Lt. Peter Leach, et al.</u>, 08-CV-8280, [the] plaintiffs alleged that on September 30, 2007, multiple [City] police officers assaulted [the] plaintiffs at a gas station and at the police precinct.

In <u>Whitfield v. City of Newburgh, et al.</u>, 08-CV-8516, the deceased plaintiff, through his estate, alleged that on July 8, 2008, officers employed by [the City] administered a taser to [the] plaintiff and ordered a police dog to attack [the] plaintiff multiple times, causing his death.

(*Id.* ¶¶ 24–32 (italics omitted).)  Plaintiff further alleges that the City "routinely reached settlement agreements" with the Plaintiffs in these cases.  (*Id.* ¶ 33.)  In particular, Plaintiff claims that "Garcia settled in 2008, Bryant, Cooper and Baynes settled in 2010, Fahey and Allen settled in 2011, and Follini settled in 2012."  (*Id.*)  Plaintiff further asserts that while the "amount of each settlement agreement [is] not publically available, upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value."  (*Id.* ¶ 34.)  Additionally, Plaintiff alleges, upon information and belief, that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions."  (*Id.*)

Plaintiff alleges two other bases for the City's "notice of allegations of excessive force." (*Id.* ¶ 35.)  Specifically, Plaintiff alleges that the City "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," on which date "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board."  (*Id.*)  Additionally, Plaintiff alleges that "[o]n August 1, 2013, Matrix Consulting Group published their Final Report entitled 'An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department—City of Newburgh, New York,'" (the "Matrix Report").  (*Id.* ¶ 36.)  According to Plaintiff, the Matrix Report stated generally that "discipline guidelines and decisions are unstructured," noted that "assigning a specific investigator and requiring a formal report" was not "previously required," and stated that "only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well."  (*Id.*)

Finally, Plaintiff makes a number of general allegations regarding the City and Town. First, Plaintiff alleges that the "City of Newburgh and Town of Newburgh have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (*Id.* ¶ 40.) Plaintiff further alleges that the "municipalities are . . . aware that such improper training has often resulted in a deprivation of civil rights," and that despite having such notice, "the municipalities have failed to take corrective action," which "caused the officers in the present case to violate plaintiff's civil rights." (*Id.*) Additionally, Plaintiff alleges that the City and Town "have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and despite such notice, "the municipalities have retained the individual defendants as police officers." (*Id.* ¶ 41.) Plaintiff also alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests," and that upon information and belief, "it was the policy and/or custom of defendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* at ¶¶ 42–43.) Furthermore, Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of defendant [City], believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated." (*Id.* at ¶ 44.) Plaintiff concludes that "the above described policies and customs demonstrate a deliberate

7

indifference on the part of the policymakers of [the City] to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶ 45.)

### B. Procedural Background

Plaintiff filed suit against the City, the City Police Officer Defendants, the Town, Defendant Ransom, and Defendant Nales on June 14, 2013. (*See* Dkt. No. 2.)[3]  On January 9, 2014, the Court held a pre-motion conference with all Parties. (*See* Dkt. (minute Entry for Jan. 9, 2014).)  Following that conference, Plaintiff submitted a letter explaining the basis for filing an amended complaint, and attaching his PAC. (*See* Dkt. No. 20.)[4]  Plaintiff never formally moved to file his PAC, which contains all of the factual allegations in his Complaint, as well as additional allegations.

On May 23, 2014, the City moved to dismiss the claims against the City and the City Police Officer Defendants, and to oppose the filing of Plaintiff's PAC as to the claims against the City and the City Police Officer Defendants. (*See* Dkt. No. 25.)  Similarly, the Town moved to dismiss the claims against the Town and Defendant Ransom, and to oppose the filing of Plaintiff's PAC as to the claims against the Town and Defendant Ransom. (*See* Dkt. No. 29.)

## II. Discussion

### A. 12(b)(5) Motion To Dismiss

The City of Newburgh moves to dismiss the claims against the City Police Officer Defendants for failure to serve, pursuant to Federal Rule of Civil Procedure 12(b)(5).

---

[3] In June 2014, the Court so ordered a stipulation between Plaintiff and Defendant Nales to dismissal of the claims against that Defendant. (*See* Dkt. No. 35.)

[4] Plaintiff's PAC also is filed as an attachment to Plaintiff's Memorandum of Law in Opposition, (*see* Dkt. No. 46 Ex. A), and as an attachment to an affidavit submitted by the City in connection with its Memorandum of Law, (*see* Dkt. No. 26 Ex. A).

1.  Standard of Review

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l. Co. v. Malaysia Int'l Shipping Corp*., 549 U.S. 422, 430–31 (2007).  Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim.  *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service."  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (brackets and internal quotation marks omitted).

In deciding a Rule 12(b)(5) motion, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service."  *C3 Media & Mktg. Grp., L.L.C. v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (internal quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to dismiss, consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." (brackets and internal quotation marks omitted)).  For a plaintiff to satisfy his burden of proving adequate service, *see Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003), "[c]onclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served," *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999).  Similarly, defective service is not cured or overcome "on the mere assertion that a defendant had actual notice."  *Weston Funding, L.L.C. v.*

*Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (internal quotation marks omitted).

2.  Analysis

The Parties agree that service was attempted as follows.  "[A] summons addressed to each defendant was delivered to the City Clerk's office, 83 Broadway, Newburgh, NY 12550" in August 2013.  (Pl.'s Mem. 9.)  Plaintiff asserts that this service was proper because 83 Broadway "is the usual and typical place to serve Newburgh officers," the process server Michael Root of Majestic Process Service, Inc. went to the police department at 55 Broadway, Newburgh, NY 12550, and was told by a sergeant "that the place to serve Newburgh officers was 83 Broadway," and "Mr. Root asked Ms. [Autumn] Resto, a paralegal at Newburgh City Hall, if she could accept service on behalf of the officer[s]," "she checked with a supervisor, read the documents, and agreed to accept service on behalf of the officers."  (*Id.* at 9–10; *see also id.* Ex. C (Decl. of Michael Root) ("Root Decl.") ¶¶ 1, 3–7.)

In support of its Motion To Dismiss, the City submitted an affidavit from Michelle Kelson, Corporation Counsel for the City of Newburgh.  (*See* Aff. of Michelle Kelson (April 24, 2014) ("April 24 Kelson Aff.") ¶ 1 (Dkt. No. 27).)  Ms. Kelson avers that she was notified that the City Clerk's office had received "several summons[es] and one copy of the verified complaint" for this case, and that there was "one summons for the City and one for each individual police officer."  (*Id.* ¶ 2.)  Ms. Kelson appended the documentation that that City Clerk's office received—seven summonses and one copy of the verified complaint.  (*Id.* at Ex. A.)  The City also submitted an affidavit from Ms. Resto, who averred:

> My instructions from the Corporation Counsel are to take whatever legal papers are given to me.  I do not offer an opinion as to whether giving me these papers is proper service.  I have no authority to accept service on behalf of an individual

10

employee of the City of Newburgh. I have never been appointed an agent to accept service on behalf of any Newburgh employee.

(Aff. of Autumn Resto ("Resto Aff.") ¶ 3 (Dkt. No. 49).) In Reply, the City submitted a second affidavit from Ms. Kelson, who averred:

> Employees in my office, including Ms. Resto, have standing instructions to take legal papers delivered to this office. No one here, including myself, is authorized to accept service on behalf of any employee of the City of Newburgh. Pursuant to CPLR §311(A)(3), the Corporation Counsel's office is a designated agent for receipt of process for the City but not its employees.
>
> No employee of the Corporation Counsel's office has been designated as an agent to receive[] process pursuant to CPLR §318.
>
> The Corporation Counsel's office is on the second floor of City Hall located at 83 Broadway, Newburgh, New York. It is a separate building from the police station which is located a few hundred yards away at 55 Broadway. No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business.

(Aff. of Michelle Kelson (June 17, 2014) ("June 17 Kelson Aff.") ¶¶ 2–4 (Dkt. No. 48).)

Under Federal Rule 4(e), Plaintiff could serve the City Police Officer Defendants pursuant to state law, *see* Fed. R. Civ. P. 4(e)(1), or by delivering a copy of the summons and of the Complaint to each individual personally, leaving a copy of each at each individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or law to receive service of process, *See* Fed. R. Civ. P. 4(e)(2). The City argues, and Plaintiff does not contest, that service was not properly effected pursuant to Rule 4(e)(2). The summons and complaint were not delivered to each person individually, nor were they delivered to each individual's dwelling or usual place of abode. Finally, service was not effected by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process; the

evidence shows that Ms. Resto was not an agent authorized to receive service for the City Police

Officer Defendants, nor does Plaintiff even dispute that fact.  (Resto Aff. ¶ 3.)

Thus, the question is whether the City Police Officer Defendants were properly served

under state law, as is permissible under Federal Rule of Civil Procedure 4(e)(1).  Section 308 of

the New York C.P.L.R. ("CPLR") governs personal service upon natural persons, and provides

that service may be effected

> 1. by delivering the summons within the state to the person to be served; or

> 2. by delivering the summons within the state to a person of suitable age and
> discretion at the actual place of business, dwelling place or usual place of abode of
> the person to be served and by either mailing the summons to the person to be
> served at his or her last known residence or by mailing the summons by first class
> mail to the person to be served at his or her actual place of business in an envelope
> bearing the legend "personal and confidential" and not indicating on the outside
> thereof, by return address or otherwise, that the communication is from an attorney
> or concerns an action against the person to be served, . . . or

> 3. by delivering the summons within the state to the agent for service of the person
> to be served as designated under rule 318[.]

N.Y. C.P.L.R. § 308.  Again, service was not effected by personal delivery to the City Police

Officer Defendants or by delivery at their dwelling places or usual places of abode, nor is there

any evidence that Ms. Resto was an agent for service designated under CPLR § 318.  Thus, the

question is whether the City Police Officer Defendants were served by delivery of the

summonses to a person of suitable age and discretion at their actual place of business and by

mailing the summonses to the individuals at their last known residences or actual places of

business.[5]

---

[5] The Court notes that Plaintiff only asserts that service was proper pursuant to N.Y.
C.P.L.R. § 308(2).  (*See* Pl.'s Mem. 9–11.)

Here, Plaintiff has failed to establish that the City Police Officer Defendants were served at their "actual place of business" pursuant to CPLR § 308(2). "A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location." *Selmani v. City of New York*, 954 N.Y.S.2d 580, 581–82 (App. Div. 2012); *see also Sajimi v. City of New York*, No. 07-CV-3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) ("The term 'actual place of business' has been defined as a place where the defendant is regularly physically present or regularly transacts business."); *Varela v. Flintlock Const., Inc.*, 148 F. Supp. 2d 297, 301 (S.D.N.Y. 2001) ("Actual place of business is statutorily defined as any location that the defendant, through regular solicitation or advertisement, has held out as its place of business. For a location to be a person's actual place of business for service pursuant to CPLR § 308(2), that person must be shown to regularly transact business at that location." (citation and internal quotation marks omitted)). Plaintiff makes no such showing. Indeed, the only evidence submitted on this issue is from Ms. Kelson, who averred, "No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business." (June 17 Kelson Aff. ¶ 4.) Plaintiff has failed to meet his burden of proving that service was effected at Defendants' place of business. *See GMA Accessories, Inc. v. Solnicki*, No. 07-CV-3219, 2010 WL 3749213, at *4 (S.D.N.Y. Sept. 24, 2010) (noting that the plaintiff has the burden of showing service was made at the defendant's place of business and holding that the plaintiff failed to meet this burden when it

failed to submit any evidence).[6]  Accordingly, service was improper under New York law.  *See*

*Davis v. City of New York*, No. 07-CV-1395, 2008 WL 2511734, at *3 (S.D.N.Y. June 19, 2008)

(holding that an attempt to effect service on individual police officers at the office of the city's

corporation counsel was invalid because the "police precinct to which they report and where they

conduct their business is their actual place of business" and the plaintiff "made no effort to serve

the officers personally or at their actual residences"); *Moultry v. City of Poughkeepsie*, 154 F.

Supp. 2d 809, 812 (S.D.N.Y. 2001) (holding that service was improper under New York law

where the plaintiff tried to serve police officer defendants at the city chamberlain's office, and

the defendants worked at police department headquarters, reported to work at headquarters at the

beginning and end of each shift, and "[u]nless they [were] testifying in [c]ity [c]ourt, the officers

ha[d] no official police business in [c]ity [h]all, and they [did] not work for or with the [c]ity

[c]hamberlain").  Furthermore, even if Mr. Root went to the Police Department at 55 Broadway,

was told by a sergeant to go to the City Attorney at 83 Broadway, and was told by Ms. Resto that

she could accept service on behalf of the officers, as Mr. Root declared, service was still

improper.  (*See* Root Decl. ¶¶ 3–7.)  *See Moultry*, 154 F. Supp. 2d at 811–12 (holding that

service on individual police officers at the city chamberlain's office was improper even though a

clerk for the chamberlain accepted service on behalf of the individual police officers and "told

the process server that he had come to the right place, and that she was empowered to accept

personal service for the individual police officers").[7]

---

[6] Mr. Root's declaration that 83 Broadway is the usual and typical place to serve all
Newburgh officers and employees, (Root Decl. ¶ 3), is the type of "conclusory statement[]" that
is insufficient to carry the burden that service was adequate.  *Doe v. Alsaud*, 12 F. Supp. 3d 684,
687–88 (S.D.N.Y. 2014) (internal quotation marks omitted).

[7] Under New York law, when serving a *corporation*, a process server may rely on the
representations of employees of the corporation with respect to who may accept service on the

Additionally, when effecting service under state law, a plaintiff must, at the very least, serve a summons and notice.  Specifically, "[i]f the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and . . . the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305(b).  Here, Plaintiff served a summons for the City and summonses for each of the six individual City Police Officer Defendants, but only one copy of the Complaint.  (*See* April 24 Kelson Aff. Ex. A.)  None of the summonses contained any notice of the claims.  (*Id.*) Thus, at least five of the summonses served on the City Police Officer Defendants did not have attached or contain either a copy of the Complaint or notice of the claims, and therefore were invalid under New York law.

Next, Plaintiff argues that, if the Court found service to be improper, it "should be cognizant of the fact that, at the time of the filing of this case, Plaintiff was pro se" and therefore should be granted special leniency regarding procedural matters.  (Pl.'s Mem. 11.)  However, Plaintiff was pro se for only a very short portion of this case.  Plaintiff filed his Complaint pro se on June 14, 2013.  (Dkt. No. 2.)  On August 21, 2013, Roberta D. Asher[8] entered a notice of appearance on behalf of Plaintiff.  (Dkt. No. 4.)[9]  Thus, when service was attempted on August 29, 2013, Plaintiff was represented by counsel.  (Pl.'s Mem. Ex. D.)  Therefore, the Court sees

corporation's behalf.  *See Melkaz Int'l Inc. v. Flavor Innovation Inc.*, 167 F.R.D. 634, 642 n.6 (E.D.N.Y. 1996).  Here, however, Mr. Root was serving individuals and, indeed, not even serving them at their place of business.

[8] The Clerk of the Court is respectfully requested to change the name of the attorney appearing for Plaintiff from Stacy Nicole Baden to Roberta D. Asher, as indicated on the notice of appearance.  (*See* Dkt. No. 4.)

[9] Plaintiff's second counsel, David A. Zelman, entered a notice of appearance on Plaintiff's behalf on December 19, 2013.  (Dkt. No. 18.)

no reason to extend special solicitude to Plaintiff regarding his inadequate service on the basis of his temporarily pro se status. *Cf. Marchand v. Simonson*, 16 F. Supp. 3d 97, 106–07 (D. Conn. 2014) (noting that the court would "take[] into consideration [the] plaintiff's pro se status at the time he filed his amended complaint," but that because the plaintiff was represented at the time he filed opposition to a motion, the court "need not apply the liberal pro se construction in considering [the] plaintiff's opposition" (italics omitted)); *Neely v. RMS Residential Mortg. Solution, L.L.C.*, No. 12-CV-1523, 2013 WL 752636, at *12 (E.D.N.Y. Feb. 26, 2013) ("Although the [c]ourt liberally construed [the] [p]laintiff's pro se [o]riginal [c]omplaint, since [the] [p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)); *Eaves v. Strayhorn*, No. 09-CV-394, 2010 WL 2521449, at *9 (S.D. Ohio June 15, 2010) ("[The] [p]laintiff cannot use the initial pro se filing to obscure the fact that he, with counsel, allowed the statute of limitations to run before re-filing his complaint." (italics omitted)); *Khan v. Abercrombie & Fitch, Inc.*, No. 01-CV-6163, 2003 WL 22149527, at *10 (S.D.N.Y. Sept. 17, 2003) (refusing to allow a plaintiff to amend her complaint at a late stage of litigation despite her argument she should be afforded deference based on her pro se status, where she was pro se when the case was filed but "has been represented by counsel since the earliest stages of [the] action").

Prior to 1993, "the former Rule 4(j) . . . provided that if service was not made within 120 days, and the serving party cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice." *Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007) (internal quotation marks omitted). Following the 1993 amendments, the relevant rule, now codified in Rule 4(m), states, "If a defendant is not

served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Thus, the amendment provided "district courts [with] discretion to grant extensions even in the absence of good cause."  *Zapata*, 502 F.3d at 196; *see also Henderson v. United States*, 517 U.S. 654, 662 (1996) ("[I]n 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period even if there is no good cause shown." (internal quotation marks omitted)).

Here, Plaintiff has not shown good cause—or indeed even tried to argue that good cause existed, instead merely arguing that service was proper and that Plaintiff should get solicitude as he previously was pro se.  (Pl.'s Mem. 9–11.)  "Good cause is deemed to exist in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control."  *Ligon v. City of New York*, No. 12-CV-2274, 2013 WL 3502127, at *1 (S.D.N.Y. July 12, 2013) (internal quotation marks omitted).  "[A]ttorney inadvertence or negligence does not establish good cause," nor does "ignorance of the law." *Novak v. Nat'l Broad. Co. Inc.*, 131 F.R.D. 44, 45–46 (S.D.N.Y. 1990).  "Additionally, a mistaken belief that service was proper does not establish good cause."  *Bernstein v. Vill. of Piermont*, No. 11-CV-3677, 2012 WL 6625231, at *3 (S.D.N.Y. Dec. 20, 2012) (internal quotation marks omitted).  The Court sees no basis for making a finding that there was good cause for Plaintiff's failure to timely serve the City Police Officer Defendants.

Thus, the only remaining question is whether, in the absence of good cause, the Court should exercise its discretion to grant an extension.  Importantly, if the Court were to dismiss the claims against the City Police Officer Defendants, Plaintiff would not be able to bring the claims

again because they would be time-barred.  Because Section 1983 "does not provide a specific statute of limitations," "courts apply the statute of limitations for personal injury actions under state law."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations."  *Id.*  The events giving rise to this suit occurred on June 17, 2010.  (Compl. ¶ 10 (Dkt. No. 2); PAC ¶ 10.)  Thus, the statute of limitations expired on June 17, 2013, three days after this suit was filed.  (*See* Dkt. No. 2.)  "Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," there must be "sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties."  *Zapata*, 502 F.3d at 197 (footnote omitted).

When courts are deciding whether to exercise their discretion to extend the service deadline in the absence of good cause, they are to consider the following factors:  "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision."  *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999).  Regarding the first factor, as explained above, the applicable statute of limitations would bar the refiled action, so Plaintiff would be prejudiced if the Court declined to grant an extension.  Though this factor weighs in favor of an extension, it "does not guarantee an extension for every case that may be time-barred if refiled."  *Bunim v. City of New York*, No. 05-CV-1562 et al., 2006 WL 2056386, at *3 (S.D.N.Y. July 21, 2006) (internal quotation marks omitted).  Therefore, the Court must consider the other factors.  There are no indications that the City Police Officer Defendants have actual notice of the claims

asserted or that they attempted to conceal the defect in service. However, there are also no allegations that these Defendants would be prejudiced if the Court granted an extension. *See Alvarado v. Am. Freightways, Inc.*, No. 04-CV-9536, 2005 WL 1467893, at *6 (S.D.N.Y. June 21, 2005) (holding that allowing service after the statute of limitations has expired does not, by itself, constitute prejudice). Here, because Plaintiff "would be time-barred from refiling and the defendants allege no prejudice if Rule 4(m) relief is granted, the balance of equities tips in favor of [Plaintiff]." *Id.*; *see also Gore v. RBA Grp., Inc.*, No. 03-CV-9442, 2009 WL 884565, at *7 (S.D.N.Y. Mar. 27, 2009) ("Since the statute of limitations would bar the plaintiff from re-filing his suit against [the defendant] and nothing in the record indicates that an extension of the time for service will prejudice the defendant, the balance of equities tips in favor of the plaintiff."). "Granting . . . [P]laintiff[] a discretionary extension also furthers the principle that litigation should generally be resolved on the merits." *Alvarado*, 2005 WL 1467893, at *6. Therefore, the Court will grant Plaintiff 21 days from the date of this Opinion to properly serve the City Police Officer Defendants, or else face dismissal of his claims against these Defendants. However, no further extensions will be given, in the absence of good cause.

 B. 12(b)(6) Motion To Dismiss and Opposition to PAC

  Next, the City and Town move under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), and the Town moves to dismiss the claims against the Town Police Officer Ransom. Additionally, the Defendants move that the Court deny Plaintiff's request to file his PAC.

  1. Standard of Review

  Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely"

given when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, "'[i]t is within the sound

discretion of the district court to grant or deny leave to amend.'" *Barbata v. Latamie*, No. 11-

CV-7381, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly*, 585

F.3d 97, 104 (2d Cir. 2009)). "A district court has discretion to deny leave for good reason,

including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S.

178, 182 (1962)). However, "[o]utright refusal to grant the leave without any justifying reason

for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir.

2002). "When the plaintiff has submitted a proposed amended complaint, the district judge may

review that pleading for adequacy and need not allow its filing if it does not state a claim upon

which relief can be granted." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991);

*see also Alaska Laborers Emp'rs Ret. Fund v. Scholastic Corp.*, No. 07-CV-7402, 2011 WL

3427208, at *2 (S.D.N.Y. Aug. 3, 2011) ("[A] court should not grant a plaintiff the right to

amend [a complaint] when such amendment . . . could not withstand a motion to dismiss

pursuant to Rule 12(b)(6)." (citations and internal quotation marks omitted)). The adequacy of

the proposed amended complaint is judged by the same standard as that applied to a motion to

dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*See id.*; *see also Gen. Elec. Capital Fin., Inc. v. Bank Leumi Trust Co. of N.Y.*, No. 95-CV-9224,

1999 WL 33029, at *5 (S.D.N.Y. Jan. 21, 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (second alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences."); *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ."  (alterations and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in

21

favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citation omitted)).

### 2.  Analysis

#### a.  Section 1983 Claims Against the City and Town

Plaintiff brings claims under 42 U.S.C. § 1983 against the City and Town.  "To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013).  "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell*, 436 U.S. at 691.  Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Apr. 16, 2010); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 15, 2010).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible

when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Okla. v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 36 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida*, 375 F.3d 206,

226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).  Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation.  There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief.  Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (alteration in original) (internal quotation marks omitted).  Thus, to survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially,

an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993)).  Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.

Of the four categories among which a *Monell* plaintiff must establish, Plaintiff's allegations do not include the first two.  Plaintiff does not allege that there was a formal policy calling for the use of excessive force, nor does he allege any actions by government officials who were responsible for any offending policies.  Rather, Plaintiff's allegations implicate the third and fourth categories—a consistent practice of use of excessive force, that supervisors were aware of and tolerated the use of excessive force, a failure to train officers in the use of force, and/or a failure to supervise officers with regard to their use of force when arresting suspects.

Plaintiff makes a number of general allegations against both the City and Town in his PAC.  Plaintiff alleges that the event in question "was not an isolated incident," and, in fact, that the City and Town "have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest."  (PAC ¶ 40.)  Plaintiff further alleges that the municipalities are "aware that such improper training has often resulted in a deprivation of civil rights," and that "[d]espite such notice, the municipalities have failed to take corrective action."  (*Id.*)  Additionally, Plaintiff alleges that the City and Town "are also liable because they have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and retaining the police officers amounts to

"gross negligence and deliberate indifference." (*Id.* ¶ 41.) Plaintiff further alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests." (*Id.* ¶ 42.)

Plaintiff's PAC also contains allegations specifically against the City, apart from the allegations generally against the City and Town. First, Plaintiff alleges that the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Plaintiff also alleges that "upon information and belief, it was the policy and/or custom of [D]efendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* ¶ 43.) Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of [the City] believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated," and that these customs and policies "demonstrate a deliberate indifference on the part of the policymakers of Defendant City of Newburgh to the constitutional rights of the arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶¶ 44–45.) By themselves, these general allegations are "conclusory, and therefore must be disregarded." *Simms v. City of New York,* No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency) (citing *Iqbal,* 556 U.S. at 678–79), *aff'd,* 480 F. App'x. 627 (2d Cir. 2012); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535–37 (S.D.N.Y. 2012) (holding that "mere allegations of a municipal custom or

27

practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details" and collecting cases); *Duncan v. City of New York,* No. 11-CV-3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell*"); *Moore v. City of New York,* No. 08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (internal quotation marks omitted)); *Bradley v. City of New York,* No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language—that the [c]ity 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees— is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the] [p]laintiffs to be arrested without probable cause." (citation omitted)).

The only remaining allegation against the Town is that it "was a municipal corporation," and "was the employer and supervisor" of Defendant Ransom.  (PAC ¶ 8.)  Therefore, Plaintiff alleges, the Town "was responsible for [Defendant Ransom's] training, supervision and conduct," as well as "for enforcing the regulations of the Town of Newburgh Police Department and for ensuring that Town of Newburgh police personnel obey the laws of the State of New York and of the United States."  (*Id.*)  This allegation would only support a claim for vicarious liability, and does not state a claim for municipal liability under *Monell*.  *See City of Canton*, 489 U.S. at 385 ("Respondeat superior or vicarious liability will not attach under § 1983." (italics omitted)); *Hughes v. Salerno*, No. 11-CV-9094, 2012 WL 6097775, at *4 (S.D.N.Y. Dec. 5,

2012) ("*Monell* does not provide a cause of action for vicarious liability.").  Therefore, Plaintiff's claim for municipal liability against the Town is dismissed and the Court denies Plaintiff's request to file his PAC with regard to this claim.[10]

Plaintiff does offer more specific allegations in support of his two theories of *Monell* liability against the City.  For example, Plaintiff alleges that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive force by its employees."  (PAC ¶ 23.) As noted, Plaintiff specifically identifies nine lawsuits he represents were filed in the five years before the incident in question, at least five of which "involved allegations of unnecessary and excessive dog bites."  (*Id.*; *see also id.* ¶¶ 24–32.)  Plaintiff alleges that the "City of Newburgh routinely reached settlement agreements with the plaintiffs in the above-mentioned cases," and further alleges that "upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value."  (*Id.* ¶¶ 33–34.)  Plaintiff also alleges

---

[10] In its Memorandum of Law in Support of its Motion To Dismiss, the Town argued that the Complaint and PAC "are devoid of factual allegations supporting the inference that the alleged policies actually exist."  (Town's Mem. 6.)  Though Plaintiff responded to the City's arguments regarding his *Monell* claims, he did not respond to the Town's arguments regarding municipal liability.  (*See generally* Pl.'s Mem.)  The Town argues in reply that "Plaintiff's failure to raise any argument in opposition to the Town's motion constitutes an abandonment of the claim, and as such, the claims against the Town must be dismissed."  (Town of Newburgh and Sergeant William Ransom's Reply Br. in Further Supp. of their Mot. To Dismiss ("Town's Reply") 3 (Dkt. No. 50) (citing *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 724 (S.D.N.Y. 2005)).)  Though the Court dismisses Plaintiff's *Monell* claims against the Town on the merits, it alternatively holds that Plaintiff has abandoned this claim, as Plaintiff offered no response to the Town's arguments in support of its Motion To Dismiss the *Monell* claim.  *See Baity v. Kralik*, — F. Supp. 3d —, 2014 WL 5010513, at *16 (S.D.N.Y. Sept. 30, 2014) (holding that the court "could find [the] [p]laintiff to have abandoned any claim that *Monell* liability applies" when the plaintiff's memorandum in opposition made no mention of the defendant's arguments on that issue, and collecting cases); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) (holding, in the context of a § 1983 *Monell* claim, that "[a] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

"[u]pon information and believe," that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.* ¶ 34.)

Additionally, Plaintiff alleges that the City of Newburgh "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," when "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.* ¶ 35.)

Finally, Plaintiff alleges that Matrix Consulting Group published its final report, titled "An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department—City of Newburgh, New York," on August 1, 2013. (*Id.* ¶ 36.) According to Plaintiff,

> Among the many findings and recommendations in the report is that discipline guidelines and decisions are unstructured—the report therefore recommended, *inter alia,* that the Chief should direct improvements to the Internal Affairs process, including assigning a specific investigator and requiring a formal report, which was not previously required. In addition, only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well. This report's findings support the proposition that [the City's] training and discipline procedures are inadequate to prevent violations of arrestees['] constitutional rights.

(*Id.*)

These allegations fail to plausibly state that there is a City practice of using excessive force during arrests, generally, or using police dogs so consistent and widespread as to constitute a custom or usage. Under the third category of *Monell* claims, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to

have the force of law," *Brown*, 520 U.S. at 404, which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"); *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (discussing *Jett*). Therefore, a plaintiff may establish municipal liability by demonstrating that a municipality "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik*, 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (internal quotation marks omitted))); *Davis* 228 F. Supp. 2d at 346 (explaining that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status."). As the Supreme Court emphasized in *Monell*, Congress enacted § 1983 to impose liability on municipalities "because of the persistent and widespread discriminatory practices of state officials," and out of recognition that such practices could become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (citation and internal quotation marks omitted).

31

The lawsuits cited by Plaintiff in the PAC, even when combined with the allegations regarding the public forum comments and the Matrix Report, are insufficient to plausibly support an inference of a widespread custom.  To begin, even if the civil complaints involved comparable conduct to that alleged here, "none result[ed] in an adjudication of liability."  *Walker v. City of New York*, No. 12-CV-5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014); *see also Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *accord Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (holding, even pre-*Twombly* and *Iqbal*, that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing," as "[p]eople may file a complaint for many reasons, or for no reason at all," and "[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist"); *Rikas v. Babusch*, No. 13-CV-2069, 2014 WL 960788, at *3 (N.D. Ill. Mar. 12, 2014) ("[T]he fact that prior lawsuits were filed against [one of the defendants accused of excessive force] does not support [the plaintiff's] *Monell* claim nor does it evidence a widespread municipal practice."); *Xian Ming Wu v. City of New Bedford*, No. 12-CV-11648, 2013 WL 4858473, at *2 (D. Mass. Sept. 11, 2013) (holding that a complaint's reference to two other similar complaints is insufficient to survive a motion to dismiss).  And though numerous cases, discussed below, look to unsubstantiated allegations in lawsuits and complaints by residents to establish municipal liability, these cases do

so through the framework of deliberate indifference failure-to-train and failure-to-supervise cases

and their reasoning is therefore not persuasive here.  *See e.g.*, *Walker*, 2014 WL 1259618, at *3

(holding that failure-to-train cases, such as *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir.

1986), are inapposite to *Monell* claims alleging a widespread custom).  Simply put, the fact that

there were allegations of thirteen instances of excessive force during arrests over four years

(none of which involved findings or admissions of culpability) during which hundreds, if not

thousands, of arrests were made does not plausibly demonstrate that the use of excessive force

during arrest was so frequent and pervasive to constitute a custom.  *Walker*, 2014 WL 1259618,

at *1–3 (holding that the allegation that ten similar complaints were filed against New York City

in the ten preceding years was insufficient to state a claim because the "paltry number of

complaints (none resulting in an adjudication of liability), spread over a period so long in a city

so large, hardly suggests the frequency or pervasiveness of the purported custom that is required

to state a *Monell* claim").  (*See also* Aff. of David L. Posner ("Posner Aff.") Ex. D (Matrix

Report), at 59 (Dkt. No. 26) (noting that the City made "a total of 2,478 arrests in 2012").)[11]

---

[11] The City puts forward several documents not attached to Plaintiff's Complaint or PAC, specifically, a redacted settlement stipulation from one of the cases Plaintiff refers to in the PAC, releases signed by some plaintiffs in the cases referred to by Plaintiff in the PAC, and an excerpt of the Matrix Report.  (*See* Aff. of David L. Posner ("Posner Aff.") Ex. B–D (Dkt. No. 26).)  The Court considers the Matrix Report because it is incorporated by reference into the PAC, as Plaintiff specifically cites to the Report and its findings.  *See Wilson v. Med. Unit Officials at George R. Vierno Ctr. Jail at 09-09 Hazen St.*, No. 10-CV-1438, 2011 WL 6780934, at *2 (E.D.N.Y. Dec. 27, 2011) ("Because they are explicitly cited in [the] plaintiff's complaint, the court shall deem the ultrasound reports incorporated by reference and shall consider them in assessing [the] defendants' motion to dismiss."); *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 431 (S.D.N.Y. 2006) (considering a document outside the complaint where the plaintiff "cites to" the document in her complaint and specifically quoted from one part of it).  Furthermore, Plaintiff does not dispute the veracity of the Report provided by the City.

The other documents provided by Defendants, however, are not material to the Court's determination of the City's Motion, so the Court need not assess whether they are properly considered.

Additionally, in Plaintiff's Memorandum in Opposition, he argues that the City has a police force of 75, and that Plaintiff alleges that there were at least 15 to 20 police officers surrounding him, meaning that "Plaintiff's allegations, taken as true, would mean that at least one-fifth of the entire City of Newburgh Police Department was present for the assault of Plaintiff, and both tolerated the abuse of plaintiff's constitutional rights and did not fear retribution."  (Pl.'s Mem. 8.)  However, the size of the City's police force is not a fact alleged in the Complaint or PAC, and the Court cannot consider additional factual allegations contained in Plaintiff's papers.  *See Paul v. Bailey*, No. 09-CV-5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, . . . courts should not consider factual allegations made for the first time in opposition papers."); *Friedman v. MiraMed Revenue Grp., L.L.C.*, No. 12-CV-5328, 2012 WL 5992163, at *3 (S.D.N.Y. Nov. 19, 2012) ("[T]he [c]ourt declines to consider the additional facts set forth in [the] plaintiff's opposition papers that are not in his complaint.").[12]  In any event, the allegation that 15 to 20 officers were present during Plaintiff's arrest does nothing to establish that the alleged excessive force happened as part of a well-established practice or custom.  Instead, this allegation only supports, at best, a single instance where numerous officers allegedly used excessive force.  This is not an akin to establishing a custom of use of excessive force.  *See Tuttle*, 471 U.S. at 823–24 (1985) (plurality opinion)

----

[12] "[W]here a pro se plaintiff has submitted other papers to the [c]ourt, such as legal memoranda, the [c]ourt may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York,* No. 09-CV-5916, 2011 WL 2565301, at *3 (June 28, S.D.N.Y. 2011) (italics and internal quotation marks omitted).  Here, however, Plaintiff was not pro se when he submitted the PAC, so the Court does not have an obligation read the PAC with the special solicitude due to pro se plaintiffs.  *See Neely*, 2013 WL 752636, at *12 ("Although the [c]ourt liberally construed [the] [p]laintiff's pro se [o]riginal [c]omplaint, since [the] [p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)).

("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*[.]"); *Triano*, 895 F. Supp. 2d at 532 ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)).  For the above reasons, Plaintiff fails to state a *Monell* claim for relief against the City of Newburgh on the theory that the City of Newburgh has a custom of using excessive force during arrests so widespread to have the force of law.

The Court next considers whether Plaintiff has adequately pleaded a claim for relief against the City under a deliberate indifference theory, the fourth category of *Monell* claims. "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."  *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett*, 491 U.S. at 737); *see also City of Canton*, 489 U.S. at 394–95 (O'Connor, J., concurring in part and dissenting in part) ("Where . . . a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution."); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton* for the proposition that a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training"); *Johnson*, 2011 WL 666161, at *3 (explaining that a plaintiff may demonstrate the existence of a custom or policy by alleging "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

amounts to deliberate indifference to the rights of those who come into contact with the municipal employees"). However, such a failure to act, train, or supervise can constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds*, 506 F.3d at 192 (citing *City of Canton*, 489 U.S. at 390); *see also Marte v. N.Y.C. Police Dep't*, No. 10-CV-3706, 2010 WL 4176696, at *2 (S.D.N.Y. Oct. 12, 2010) (noting that a municipality's failure to train its employees can support § 1983 liability only where "'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" (quoting *City of Canton*, 489 U.S. at 388)).

In *City of Canton*, the Supreme Court established the "deliberate indifference" standard in the context of a claim for failure to train, but "the stringent causation and culpability requirements set out in that case have been applied to a broad range of supervisory liability claims," including claims for failure to supervise and failure to discipline. *Reynolds*, 506 F.3d at 192 (citing *Amnesty Am.*, 361 F.3d at 127 (failure to supervise); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (failure to discipline)); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (noting that "deliberate indifference" is a "stringent standard" requiring "proof that a municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)).[13]   In this context, the Supreme Court has held that "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by

---

[13] The Supreme Court has emphasized that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S. Ct. at 1359; *see also Tuttle*, 471 U.S. at 822–23 ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.").

subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Amnesty Am.*, 361 F.3d at 126 (quoting *City of Canton*, 489 U.S. at 388); *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (holding that a plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the [unconstitutional action by its employees], exhibited deliberate indifference"); *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials").

Plaintiff has attempted to allege two types of deliberate indifference claims: failure to train and failure to supervise/discipline.  Indeed, "[a] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann*, 72 F.3d at 1049.  To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious," which may be established "by showing that there were repeated complaints of civil rights violations," and "deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).  The Second Circuit has set out three requirements that must be met before a municipality may be liable under either theory: first, that a policymaker knows "'to a moral certainty'" that his or her employees will confront a given situation; second, "'that the situation either presents the employee with a difficult choice of

the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;'" and third, "'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).

Applying these principles to this case, the Court concludes that Plaintiff has sufficiently alleged that the need for more or better supervision was obvious.  There is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be.  The City asserts that the complaints relied on by Plaintiff regarding excessive force incidents that occurred between 2005 and 2008 are too sparse and too remote to support an inference of obviousness. (Def.'s Mem. of Law in Supp. of Dismissal ("City's Mem.") 10 (Dkt. No. 28); Newburgh's Reply Br. in Supp. of 12(b)(5) and 12(b)(6) Dismissal ("City's Reply") 5–6 (Dkt. No. 47).) However, the City provides no authority to support the notion that a plaintiff must cite a certain number of complaints in a certain time period to make out a *Monell* claim.  Indeed, the case law supports Plaintiff's position here.  For example, in *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014), *clarified on denial of reconsideration*, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014), the court denied a motion to dismiss a *Monell* claim on deliberate indifference grounds.  In that case, the court found it sufficient that the plaintiff's pleadings referred to other lawsuits demonstrating that the municipality "was on notice to the possible use of excessive force by its police officers on seventeen different occasions."  *Id.* at *4. There, the seventeen excessive force claims were made "in the seven-year time period prior to" the incident resulting in the suit.  *Id.*  In *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL

38

1311903, (N.D.N.Y. Mar. 31, 2014), the Northern District of New York noted in dicta that were the court deciding a motion to dismiss, the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient state a plausible failure to train case. *Id.* at *8 n.7; *see also Shepherd*, 2012 WL 4477241, at *10 (holding, on a motion to dismiss where the complaint relied on a Department of Justice ("DOJ") report finding evidence of unconstitutional activity in 2008 to support a claim that such a custom existed in 2010, that the court "[was] obligated to draw all reasonable inferences in [the] [p]laintiff's favor and thus [took] as true for purposes of th[e] motion practice the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against [the] [p]laintiff"). The Court does not see any material difference between the seventeen excessive force claims in seven years in *McCants*, the fifteen excessive force claims in five years in *Farrow*,[14] and the thirteen claims alleged in nine lawsuits in five years here.[15] While there may be questions about the quantum of proof Plaintiff has regarding these other complaints at summary judgment, Plaintiff's allegations allow the Court to plausibly infer that the City was on notice that the police officers were using

---

[14] Indeed, the fifteen cases referred to in *Farrow* were *filed* against the city in the preceding five years, so the underlying claims likely occurred even outside that timeframe.

[15] Unlike in cases such as *Perez v. N.Y.C. Dep't of Corr.*, No. 10-CV-2697, 2012 WL 3704744 (E.D.N.Y. Aug. 27, 2012), there is no doubt here that the City knew about the complaints. *Id.* at *3 (reasoning that "[w]hile a court may consider complaints made against a municipality and its response to them to determine whether the municipality acted with deliberate indifference," the plaintiff's claims must be dismissed because the "plaintiff does not allege who, if anyone, at [the department of corrections] and/or the [c]ity knew about the alleged incidents, or how and through whom these entities may have responded to the alleged incidents").

Additionally, the Court concludes that it can consider all of the other lawsuits cited by Plaintiff, not just the ones involving police dogs, as Plaintiff alleges a custom involving a broad array of unconstitutionally excessive force during arrest, resulting not only in him being attacked by a police dog, but also being punched and beaten severely during his arrest. (*See* PAC ¶¶ 14–16.)

excessive force in making arrests. *See Osterhoudt v. City of New York*, No. 10-CV-3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) ("Mere allegations have little, if any, probative force and by themselves would hardly prevent summary judgment. But in the context of Rule 12, where plausibility is in issue, it is hard to ignore these cases, which suggest that the conduct complained of is not limited to the four corners of [the plaintiff's] complaint.").

However, an allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise. Instead, a plaintiff must allege that "meaningful attempts to investigate repeated claims of excessive force are absent." *Hart v. City of Binghamton*, No. 10-CV-1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012) (internal quotation marks omitted). Put another way, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Id.* (internal quotation marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (internal quotation marks omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same). Here, Plaintiff does not offer any allegations plausibly establishing that the City failed to investigate the listed complaints of excessive force. The *only* allegation Plaintiff makes regarding the City's response to the other lawsuits and the complaints made in the public forum is that "[u]pon information and belief, the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (PAC ¶ 34.) This is insufficient.

There are two ways to plausibly plead deliberate indifference with respect to failure to supervise/discipline.  First, a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations.  Second, a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved.  However, what Plaintiff alleges here is (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that those allegedly involved were not disciplined.  This does not plausibly plead a claim for deliberate indifference.  There is no basis for the Court to conclude that Plaintiff plausibly alleged that the past conduct was *actually* unconstitutional, and therefore it would not be deliberately indifferent of the City to fail to punish police officers for conduct that was not improper or that they did not commit.  Indeed, to plausibly allege a deliberate indifference failure to discipline claim under the second strategy, Plaintiff must allege a consistent pattern of a failure to discipline unconstitutional action.  *See Posr v. City of New York*, 835 F. Supp. 120, 125 (S.D.N.Y. 1993) (holding, in granting a motion to dismiss a failure to discipline case, that while "[i]t is true that a consistent failure to discipline can give rise to a finding that a municipality has a policy of not disciplining," "[n]o court . . . has ever held that a municipality is required to discipline every officer upon a finding of wrongdoing"), *aff'd*, 22 F.3d 1091 (2d Cir. 1994); *see also Hart*, 2012 WL 1565085, at *4 (holding, in the context of a summary judgment motion, that "while [the] [p]laintiff [had] cited to numerous cases concerning citizen complaints of the use of excessive force," he "[had] not provided evidence tending to indicate that any [of the[] complaints were of substance," thus the "failure to find any of the officers engaged in excessive force alleged in the complaints does not mean *a fortiori*, that the [c]ity was deliberately indifferent to the well being of its citizens"); *cf.*

41

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (denying a motion to dismiss a deliberate indifference claim where "[t]he plaintiffs have pleaded that the [c]ity has a longstanding, de facto policy of *never* disciplining prosecutors who commit specified types of prosecutorial misconduct and not otherwise training them to avoid misconduct"). Finally, Plaintiff's allegation that the Matrix Report concluded that the City's "discipline guidelines and decisions are unstructured" and recommended that certain changes be made is insufficient to plausibly plead that there was a consistent failure to investigate allegations of misconduct or punish incidents of unconstitutionally excessive force to meet the stringent standard of deliberate indifference. In particular, Plaintiff alleges no causal link between the allegedly "unstructured" discipline guidelines and the unconstitutional practice of not investigating allegations of use of excessive force. For the above reasons, the Court holds that Plaintiff has not plausibly alleged a failure to supervise/discipline case against the City.

The Court now turns to the additional requirements for a failure to train claim. To allege a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training. In *Amnesty America*, the Second Circuit suggested that to state a claim for a municipality's failure to train its employees, a plaintiff "need only plead that the city's failure to train caused the constitutional violation," because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." 361 F.3d at 130 n.10. However, since *Twombly* and *Iqbal,* "courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms,* 2011 WL 4543051, at *2 n.3 (collecting cases), *aff'd sub nom. Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012); *see also Simms,* 480 F. App'x at 631 n.4 ("While it may be true that § 1983 plaintiffs

cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (citation omitted)); *Santos,* 847 F. Supp. 2d at 577 ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation omitted)).   To state a claim for municipal liability based on failure to train, Plaintiff therefore must allege facts that support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries.  *See Acosta v. City of New York,* No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused . . . [the] alleged violations of [the] plaintiff's rights"); *Simms,* 2011 WL 4543051, at *2 (dismissing failure to train claim where there was "not enough factual material in the [c]omplaint for the court to reasonably infer that the police misconduct [the plaintiff] allege[d] was the result of anything other than the individual acts of the arresting officers"); *Johnson,* 2011 WL 666161, at *4 (holding that a complaint that "contain[ed] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" could not withstand a motion to dismiss because the plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)); *Araujo v. City of New York,* No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").

Other than Plaintiff's boilerplate assertions discussed above, the sole fact Plaintiff pleaded with respect to the City's failure to train its officers is that, "only 43% of sworn officers who responded to the polling in the [Matrix Report] agreed that they received appropriate training to do their job well."  (PAC ¶ 36.)  This factual allegation is just not enough to nudge Plaintiff's claim from possible to plausible.  The polling data is not specific as to training regarding the use of excessive force.  Nor has Plaintiff pleaded any facts suggesting that an alleged training deficiency *caused* his constitutional injury, for example by identifying "procedural manuals or training guides" or by "highlight[ing] relevant particular aspects of police training or supervision."  *Marte,* 2010 WL 4176696, at *3.  The allegation that, three years after the incident in question took place, only 43% of officers who responded to polling stated that they received appropriate training to do their job well does not allow the Court to plausibly conclude that, at the time of the incident, the City's training as to the use of force during arrest was insufficient and that that insufficiency led to Plaintiff's injuries.  *See Hunter v. City of New York*, 35 F. Supp. 3d 310, 325–26 (E.D.N.Y. 2014) (dismissing a *Monell* failure to train claim because the pleadings did not plausibly state a claim that there was "a specific deficiency in the city's training program and that the deficiency is closely related to [the plaintiff's] ultimate injury, such that it actually caused [the plaintiff's] constitutional deprivation" (internal quotation marks omitted)); *Triano*, 895 F. Supp. 2d at 539 (dismissing a *Monell* failure to train claim where the plaintiff "merely alleged that the [t]own fail[ed] to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train"); *Khanukayev v. City of New York*, No. 09-CV-6175, 2012 WL 3538729, at *4 (S.D.N.Y. Aug. 13, 2012) (dismissing a failure to train claim where "the complaint [does not] . . .

44

allege . . . the manner in which there was a failure to train"); *Doe v. City of New York*, No. 09-CV-9895, 2012 WL 2900483, at *2 (S.D.N.Y. July 2, 2012) ("The [a]mended [c]omplaint contains no facts elaborating on (or even theorizing as to) the defective nature of the NYPD training program, let alone an allegation as to how a defect in training or supervision caused her harm."); *Simms*, 2011 WL 4543051, at *3 ("While this assertion does specify what type of training the officers lacked, it does not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency."); *Johnson*, 2011 WL 666161, at *4 (dismissing a failure to train claim where plaintiff did not plead "any facts that plausibly allege[d] a specific deficiency in the training or supervision program that accounts for deprivation of [his] constitutional rights" and "[did] not identify procedural manuals or training guides, nor [did he] highlight relevant particular aspects of police training or supervision" (internal quotation marks omitted)); *Brown v. City of New York*, No. 09-CV-2337, 2010 WL 4077925, at *2 (S.D.N.Y. Oct. 13, 2010) (dismissing a failure to train claim where the plaintiff "[did] not allege any . . . specific deficiencies in the officers' training, nor [did] he allege any facts from which the court could infer that such . . . deficiencies existed"); *Williams v. City of New York*, 690 F. Supp. 2d 338, 345–46 (S.D.N.Y. 2010) (dismissing a plaintiff's failure to train claim where the plaintiff's complaint "once mention[ed] the [c]ity's inadequate training program," but did "not set forth a single factual allegation relating to the program"). For the foregoing reasons, Plaintiff fails to state a claim against the City under *Monell*. However, the Court will give Plaintiff one last chance to plead a *Monell* claim against the City.

### b. Claims against Defendant Ransom

Plaintiff's PAC contains the following allegation against Defendant Ransom. The City Police Officers "gave chase to [P]laintiff in a number of police vehicles," and "[a]t some point

soon thereafter, and prior to Plaintiff stopping his vehicle," Defendant Ransom joined the chase. (PAC ¶ 12.)  That is the only allegation specifically referring to Defendant Ransom.  However, the Complaint and PAC also contain a number of allegations against "the defendant police officers," a term defined in the Complaint as the City Police Officer Defendants and unknown police officers 1-5, (Compl. ¶ 4), and not defined in the PAC.  Plaintiff alleges that, after he pulled over, Defendant Maguire "opened the truck door and ordered his police dog to attack [P]laintiff," and Plaintiff was attacked by the police dog and punched by Defendant Maguire. (PAC ¶ 14.)  Plaintiff further alleges that although he was "not resisting the police officers in any way," he was "dragged from the truck and thrown to the ground by [Defendant Maguire] and additional officers," and was "thereupon beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done."  (*Id.* ¶ 15.)  Then, after Plaintiff was handcuffed and secured, "the police dog was again ordered to attack" Plaintiff.  (*Id.* ¶ 16.)  Additionally, Plaintiff alleges that "the defendant police officers are liable for failing to intervene . . . because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional rights were being violated, and (3) the officers did not take reasonable steps to intervene."  (*Id.* ¶ 39.)

In response to the Town's Motion To Dismiss, Plaintiff argues that Defendant Random "does not deny being present at the scene," and cites to Defendant Ransom's testimony at Plaintiff's criminal trial to establish his presence at the scene.  (Pl.'s Mem. 11–13.)  Plaintiff then argues that this is sufficient at the pleading stage because Plaintiff has sufficiently alleged that Defendant Ransom was present and Plaintiff need not plead the "specific involvement of each and every officer while he was being assaulted and bitten by a police dog[.]"  (*Id.* at 12.)

However, there is simply no basis for the Court to consider the testimony given at trial in the manner that Plaintiff would like.  This testimony, attached as Exhibit B to Plaintiff's Memorandum in Opposition, is not attached to the PAC, nor is it integral to the PAC or incorporated by reference into the PAC.  *See Rosenblum v. Thomson Reuters (Markets) L.L.C.*, 984 F. Supp. 2d 141, 146 (S.D.N.Y. 2013) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, . . . documents incorporated by reference in the complaint[, and] a document, not incorporated by reference, where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (footnotes and internal quotation marks omitted)).  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents[.]"  *Bill Diodato Photography L.L.C. v. Avon Products, Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks omitted).  "[T]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint."  *Id.* (internal quotation marks omitted).  Here, Plaintiff clearly has notice of the document, since he is the one who submitted it to the Court.  *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) ("[T]here is no dispute that, pursuant to the first prong of the integrality test, plaintiffs had 'actual notice' of the extraneous information since they enclosed the extrinsic documents with their opposition brief.").  The Complaint and PAC make no reference whatsoever to Defendant Ransom's testimony at Plaintiff's criminal trial, and thus do not incorporate this document by reference.  Moreover, there is no evidence that Plaintiff relied on this trial testimony in framing the Complaint or PAC.  And, the fact that it was Plaintiff, himself, who submitted this document

47

as an attachment to his opposition memorandum, counsels against the Court considering it.  *Id.* at

122–23 (noting that "[c]ourts in [the Second] Circuit have made clear that a plaintiff may not

shore up a deficient complaint through extrinsic documents submitted in opposition to a

defendant's motion to dismiss" and collecting cases).

Finally, the Court "may also consider matters of which judicial notice may be taken, even

if the corresponding documents are not attached to or incorporated by reference in the

complaint."  *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).

However, even if this trial testimony is appropriate for judicial notice, the Court would consider

it "only to establish [its] existence and legal effect, or to determine what statements [it] contained

not for the truth of the matters asserted."  *Liang v. City of New York*, No. 10-CV-3089, 2013 WL

5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (alterations and internal quotation marks omitted)

(quoting *Twine v. Four Unknown N.Y. Police Officers,* No. 10-CV-6622, 2012 WL 6184014, at

*7 (S.D.N.Y. Dec. 12, 2012)); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If

the court takes judicial notice, it does so in order to determine *what* statements [the document]

contained—but *again not for the truth of the matters asserted.*" (internal quotation marks

omitted)).

"It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted).  There are two ways a

plaintiff can establish personal involvement of a police officer in the use of excessive force.  "A

police officer is personally involved in the use of excessive force if the officer either: (1) directly

participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of

the victim even though he had a reasonable opportunity to do so."  *Vesterhalt v. City of New*

*York*, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009).  Additionally, to be liable the officer must "observe[] or ha[ve] reason to know that an individual's constitutional right has been violated[.]" *Brooks v. County of Nassau*, — F. Supp. 3d —, 2014 WL 5093277, at *5 (E.D.N.Y. Oct. 9, 2014) (internal quotation marks omitted).

Plaintiff does not allege that Defendant Ransom directly participated in the assault, therefore the question is whether he sufficiently alleges that Defendant Ransom was present and failed to intercede, even though he had a reasonable opportunity to do so.  First, Plaintiff's allegation that all "the defendant police officers are liable for failing to intervene . . . because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional rights were being violated, and (3) the officers did not take reasonable steps to intervene" is a conclusory allegation that does nothing more than provide a formulaic recitation of the elements of a cause of action, and is therefore not entitled to the presumption of truth.   (PAC ¶ 39.)  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . In keeping with [this] principle[] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").  To state a claim against each individually named defendant, Plaintiff must include allegations as to that defendant.  *See Ochre L.L.C. v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."), *aff'd*, 530 F. App'x 19 (2d Cir. 2013); *Appalachian Enters., Inc. v. ePayment*

*Solutions, Ltd.*, No. 01-CV-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("A plaintiff fails to satisfy Rule 8, where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (alterations and internal quotation marks omitted)).

In a claim for excessive force or for failure to intervene with respect to excessive force, courts in the Second Circuit have allowed plaintiffs to use a flexible approach, recognizing the difficulty that plaintiffs may have in pleading who did what.  For example, "[a] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).  However, this does not eliminate Plaintiff's burden to allege facts supporting a plausible inference of personal involvement by Defendant Ransom.  For example, it is sufficient to allege "who was present during the assaults, and that these defendants *either* directly participated in the excessive force *or* failed to intervene." *Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *3 (E.D.N.Y. Feb. 17, 2010) (emphasis added), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010).  But, a plaintiff fails to state a claim for which relief can be granted if he does not make any factual allegations that any officer "was present" or "had an opportunity to intercede." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 207 (S.D.N.Y. 2013) (discussing failure to intervene in the context of an alleged due process violation).  In assessing the sufficiency of Plaintiff's claims, the Court is also mindful that the activities he describes—being handcuffed, thrown on the ground, beaten, and attacked by a dog—"are likely to have prevented [P]laintiff from identifying which of the defendant officers specifically engaged in the bad acts." *Snoussi*, 2010 WL 3924255, at *3 (brackets and internal quotation marks omitted).

50

Here, though, Plaintiff fails to meet this liberal standard with respect to his allegations against Defendant Ransom.  Plaintiff merely pleads that Defendant Ransom joined the police chase.  (PAC ¶ 12.)  Plaintiff does not sufficiently plead personal involvement, because he does not even plead that Defendant Ransom was present at the scene of the alleged unconstitutional conduct, and therefore also does not sufficiently plead that a reasonable person in Defendant Ransom's position would know that Plaintiff's rights were being violated and that Defendant Ransom had a reasonable opportunity to intervene but failed to do so.  Plaintiff argues that Defendant Ransom was at the scene, relying not on allegations in the Complaint or PAC but rather on a document outside the pleadings that the Court is not permitted to consider, and based on an inference he suggests that "[a]t no point does Ransom claim that he left the scene, so he was presumably also present when Plaintiff was thrown to the ground and beaten, and attacked by the police dog a second time while in handcuffs."  (Pl.'s Mem. 12.)  However, Plaintiff never alleged that Defendant Ransom was at the scene.  But, in light of Plaintiff's citation to Defendant Ransom's trial testimony, the Court will give Plaintiff one more opportunity to amend his Complaint to include any additional allegations against Defendant Ransom.

### III.  Conclusion

For the above reasons, the Town's Motion To Dismiss is granted; the claims against the Town are dismissed with prejudice, and the claims against Defendant Ransom are dismissed without prejudice.  The City's Motion To Dismiss is granted in part and denied in part.  In particular, the claims against the City are dismissed without prejudice, but Plaintiff may file his PAC against the City Police Officer Defendants.  Plaintiff shall properly serve the City Police Officer Defendants within 21 days of the date of this Opinion, or else face dismissal of the claims against those Defendants.  Additionally, Plaintiff is given 21 days to file an amended

complaint to supplement his allegations against Defendant Ransom and the City.  The Clerk of

the Court is respectfully requested to terminate the pending Motions.  (*See* Dkt. Nos. 25, 29.)

SO ORDERED.

Dated:      March 26, 2015
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE